UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MICHAEL RAY WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 4:13-cv-123-RLY-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation on Complaint for Judicial Review

Plaintiff Michael Ray Williams applied on April 5, 2010, for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that he has been disabled since June 26, 2009. An administrative law judge ("ALJ") held a hearing on March 1, 2012, at which Mr. Williams appeared by video and testified. On March 8, 2012, acting for the Commissioner of the Social Security Administration, the ALJ found that Mr. Williams is not disabled. The Appeals Council denied review of the ALJ's decision on June 17, 2013, rendering the ALJ's decision for the Commissioner final. Mr. Williams timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision. Chief Judge Young has referred this matter under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to the appropriate disposition. (Dkt. 26).

Mr. Williams contends that the ALJ's decision is not supported by substantial evidence. He argues the ALJ erred by: (1) failing to give controlling weight to the opinion of his treating physician; (2) failing to address evidence that he had a grip strength of ten percent; (3) improperly evaluating the medical evidence; and (4) making a flawed credibility determination. As addressed below, the court finds that the ALJ's findings are supported by substantial evidence in the record. The Commissioner's decision is therefore AFFIRMED.

## Standard for Proving Disability

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1] Mr. Williams is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these

---

[1] Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria., 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, material identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled, despite his current medical condition. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The impairment must also meet the twelve-month duration requirement. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on his age, work experience, education, and RFC; if so, then he is not disabled. The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is narrow and deferential. The court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). This court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's (and ultimately the Commissioner's) findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

In addition, the ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).  Moreover, the ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions.  *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012).

### The ALJ's Sequential Findings

At step one, the ALJ found that Mr. Williams had not engaged in substantial gainful activity since June 26, 2009, the alleged onset date.  At step two, the ALJ identified rheumatoid arthritis as the only severe impairment.  At step three, the ALJ evaluated Mr. Williams's severe impairments against the listed impairments in 20 C.F.R. Part 404 and found that none was met, a finding Mr. Williams does not challenge.

For purposes of steps four and five, the ALJ adopted the following residual functional capacity (RFC)[2] to perform the full range of light work with the following limitations:

> He can lift, carry, push and pull up to 20 pounds occasionally and 10 frequently.  He can stand and/or walk for up to 6 hours in an eight-hour workday (for 2 hours at a time, and then must be able to sit for 5 minutes).  He can sit for 6 hours in an eight-hour workday (for 2 hours at a time, and then must be able to stand for 5 minutes).  The claimant can only occasionally stoop, kneel, crouch, and climb ramps or stairs.  He should not crawl, climb ladders/ropes/scaffolds, or work at

---

[2] Residual functional capacity (RFC) represents what an individual can still do, despite his or her limitations.  20 C.F.R. § 404.1545(a).

> unprotected heights or around hazardous machinery. He can only occasionally perform work requiring the forceful use of the lower extremities. He can only occasionally reach above shoulder level with the upper extremities. He should not perform firm forceful grasping with either hand except as required to lift/carry/push/pull within the parameters set forth above. He should not work with concentrated exposure to extreme cold.

(R. 17-18)

At step five and based on the opinion of a vocational expert, the ALJ decided that Mr. Williams is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (R. 22). Accordingly, the ALJ found that he is not disabled.

## Mr. Williams's Assertions of Error

Mr. Williams contends that the ALJ's decision is not supported by substantial evidence and that he failed to address how a limited grip strength of ten percent would affect his ability to work. Moreover, he contends the ALJ improperly evaluated the medical evidence and made a flawed credibility determination. The court addresses the assertions below while also summarizing the medical and other evidence relied on by the ALJ.

## Analysis

A. **The ALJ properly evaluated the treating physician's opinion and determined it was not entitled to controlling weight.**

1. The Treating Physician Rule

The weight an ALJ gives to medical opinions is guided by factors described in 20 C.F.R. § 404.1527(c). A medical opinion by a treating physician or other acceptable treating medical source about the nature and severity of a

6

claimant's impairments, including any resulting mental or physical restrictions, is entitled to "controlling weight" if it is well-supported by objective medical evidence and is not inconsistent with other substantial evidence. *Id.* § 404.1527(d)(2). *Hofslien v. Barnhart,* 439 F.3d 375, 376 (7th Cir. 2006). An ALJ may also discount a treating physician's opinion when it is "internally inconsistent" or is inconsistent with the opinion of a consulting physician. *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007). And while a treating physician's opinion is entitled to controlling weight if well supported by medically acceptable techniques and not inconsistent with other substantial evidence, it is not the final word on a claimant's disability. *Books v. Chater,* 91 F.3d 972, 978 (7th Cir. 1996). In addition, an ALJ may discount a treating physician's opinion under the circumstances above, as long as he minimally articulates his reasons for doing so. *Skarbek v. Barnhart,* 390 F.3d at 503.

      2. Dr. Kalovidouris's Opinion

In evaluating the medical evidence and medical source opinion evidence, the ALJ considered the opinions of the treating physician, Dr. Apostolos Kalovidouris, as well those of the consulting physicians. Mr. Williams began seeing Dr. Kalovidouris in July and November of 2008 for his rheumatoid arthritis. He noted that the patient was "doing very well" and his condition was "getting along very well." (R. 280, 282). Mr. Williams did not see Dr. Kalovidouris again until October 28, 2011, at which time Dr. Kalovidouris noted that Mr. Williams had limited grip strength of ten percent. He reported an impression of active rheumatoid arthritis

and severe gingivitis.  He also obtained x-rays of the hands which showed "soft tissue swelling in the wrists," and narrowing of the joints.  He noted the "x-ray findings were compatible with inflammatory arthritis such as rheumatoid," while also stating that "based on today's evaluation, the patient is at present and for the foreseeable future totally disabled." (R. 351).  Dr. Kalovidouris saw Mr. Williams the following month and noted the patient "continues having pain and stiffness in hands, wrists, elbows, shoulders, and feet," and noted a thirty percent improvement attributed to taking his medications (R. 348).  The administrative record reflects Mr. Williams's last visit with Dr. Kalovidouris on January 10, 2012, in which it was noted he had "pain and swelling of the hands, wrists, elbows," with thirty percent improvement after taking methotrexate (R. 354).

    3.   Mr. Williams's Assertions of Error and Analysis of the ALJ's Findings

The ALJ decided to give little weight to the opinion of Dr. Kalovidouris for three reasons:  (1) it was inconsistent with the overall record of medical evidence and that of the consulting physicians, (2) it made a conclusory determination on an issue reserved for the Commissioner, and (3) it was offered during a prolonged period when Mr. Williams was not taking prescribed medication, and did not take into account later treatment notes indicating improvement in his condition with medication.

Mr. Williams contends the ALJ erred by giving his treating physician's opinion little weight, and in particular contending that the ALJ failed to address Dr. Kalovidouris's assessment of a grip strength of ten percent, as reflected in his

treatment notes of October 2011 (R. 351). The ALJ considered medical opinion evidence from Dr. Kalovidouris dating back to July 2008. His findings reflect an accurate accounting of Mr. Williams's office visits beginning in 2008 and concluding in early 2012, as detailed above. In considering the entirety of the medical evidence, the ALJ found:

> There is no reason to believe that with medication his arthritis will not be well-controlled, as it was previously, within a few months. The record clearly shows that the claimant's symptoms are much less severe when he is on the prescribed medical regimen; even when he was not, during 2009 and 2010, the record does not show that claimant was significantly symptomatic.

(R. 20) In concluding his analysis of the medical findings, the ALJ gave little weight to the statement made by Dr. Kalovidouris in October 2011 that "the claimant was totally disabled at present and for the foreseeable future," despite his status as a treating rheumatologist (R. 21). The ALJ cited Dr. Kalovidouris's failure to offer "any specific function-by-function limitations, while also not indicating that "total disability" will last for a twelve-month period. The ALJ, instead, gave greater weight to the state agency consultants, Dr. Lavallo and Dr. O'Neall, and also to the consultative examiner, Dr. Akaydin. The ALJ relied upon Dr. Akaydin's opinion that Mr. Williams was capable of performing "most forms of at least minimally physically strenuous type work without any overt difficulty, including sedentary work, if he took his rheumatoid arthritis medication" (R. 20, 292). He relied upon Dr. Lavallo's functional capacity assessment, which was later affirmed by opinion of Dr. O'Neall (R. 307). He further articulated his reasoning for giving little weight to Dr. Kalovidouris's October 2011 opinion, noting it was offered after a prolonged

9

period when Mr. Williams was not taking prescribed medication, and later citing treatment records reflecting improvement with medication (R 21). In doing so, he properly discounted the portions of the treating physician's opinion that were inconsistent with the opinions of the consulting physicians, and weighed the medical opinion evidence with substantial evidence in the record. See *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007).

      Mr. Williams also contends the ALJ erred in failing to address how evidence of limited grip strength would affect his ability to work. He is asking the court to find a fatal flaw in the ALJ's findings based on the ALJ not having specifically discussed one particular treatment note. Although an ALJ cannot ignore a line of evidence that undermines the conclusions he made, he need not address in his decision every piece of evidence. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012). Here, the ALJ did not ignore the evidence of grip strength included in Dr. Kalovidouris's October 2011 opinion, but rather provided a legitimate justification for giving less weight to Dr. Kalovidouris's assessment as a whole.[3] The ALJ considered medical evidence before and after this October 2011 evaluation, and concluded by saying "this opinion was offered after a prolonged period when the claimant was not taking prescribed medication" (R. 20). The ALJ's decision accurately reflects the medical evidence and is supported by substantial evidence in

---

[3]    Dr. Kalovidouris's assessment of grip strength is limited to one treatment note from October 28, 2011, which states "Grip strength only 10%." This finding was part of a larger diagnosis of Mr. Williams's physical examination during an office evaluation.

the record, and the absence of discussion of a specific notation in a treatment record to which the ALJ permissibly gave little weight is not error.

> **B. The ALJ's credibility assessment was sufficient and supported by substantial evidence.**

An ALJ is required to consider a claimant's statements about his symptoms and how they affect his daily life and ability to work. 20 C.F.R. § 404.1529(a). He is not, however, required to accept the claimant's statements blindly, but must sufficiently explain his reasons for the finding on credibility, supported by the evidence in the record. *Schwabe v. Barnhart,* 338 F.Supp.2d 941 (7th Cir. 2004). The ALJ's credibility finding is reviewed deferentially and will not be set aside unless it is "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). Here, the ALJ's credibility assessment begins with a boilerplate finding, which the Seventh Circuit has criticized repeatedly as useless and "unhelpful to a reviewing court." (R. 18; *Bjornson v. Astrue,* 671 F.3d 640 (7th Cir. 2012). *See also Parker v. Astrue,* 597 F.3d 704, 709 (7th Cir. 2010). It concludes, however, with a proper assessment to which this court must give deference. The ALJ found that Mr. Williams continued his smoking habit between 2007 and 2011, while at the same time testifying he did not have money for doctors' visits or medication (R. 20, 27). The ALJ also found Mr. Williams's credibility diminished because he "quit work for reasons unrelated to his severe impairment." (R. 20). The ALJ further observed a lack of treatment from his primary care physician during that time period, and noted Mr. Williams did not seek emergency room treatment for alleged severe pain symptoms. Mr. Williams has not demonstrated that the ALJ's credibility

11

assessment was "patently wrong," and substantial evidence in the record supports that assessment.

## Conclusion

For the foregoing reasons, the Commissioner's decision is AFFIRMED because it is supported by substantial evidence adequate to support his conclusion. Any objections to the Magistrate Judge's Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for such failure.

IT IS SO RECOMMENDED.

Date: 06/13/2014

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

**Distribution:**

All ECF-registered counsel of record via email generated by the court's ECF system